IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY RIDDLE, SYBIL GRIFFIN, JAMES SANDERS as administrator of the estate of BETTY SANDERS, RITA CARR, CURTIS BOBO, HUEY DANZIE, ROY SHAIN, RAY HEMKEN, and CLEMOTINE CORNELIOUS, <br><br> Plaintiffs, <br><br> vs. <br><br> MERCK & CO., INC., WALGREEN CO., d/b/a WALGREENS, AMERICAN DRUG STORES, INC., d/b/a OSCO DRUGS, and CVS PHARMACY, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  CIVIL NO. 06-172-GPM |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This action is before the Court on the Motion to Remand brought by Plaintiffs Kimberly Riddle, Sybil Griffin, James Sanders as administrator of the estate of Betty Sanders, Rita Carr, Curtis Bobo, Huey Danzie, Roy Shain, Ray Hemken, and Clemotine Cornelious (Doc. 7). For the following reasons, the motion is **GRANTED**.

### INTRODUCTION

Plaintiffs originally filed this action in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, asserting claims based upon strict products liability, negligence, consumer fraud, common-law fraud, and breach of warranty arising from personal injuries allegedly caused by Vioxx, a prescription pain medication manufactured by Defendant Merck & Co. ("Merck").

Merck subsequently removed the action to this Court, asserting that Defendants Walgreen Co. ("Walgreens") and American Drug Stores, Inc. ("Osco Drugs"), who are, like Plaintiffs, citizens of Illinois, have been fraudulently joined to defeat federal diversity jurisdiction.[1] Plaintiffs have requested remand of the action to Illinois state court for lack of subject matter jurisdiction.

At issue here are Count III, Count VI, and Count XI of Plaintiffs' complaint, which assert, respectively, claims for sale of a defective product sounding in strict products liability, negligent failure to warn, and breach of warranty against Walgreens and Osco Drugs. More specifically, Plaintiffs' complaint alleges that a pharmacy owned and operated by Walgreens filled prescriptions for Vioxx for Plaintiffs Kimberly Riddle and Rita Carr, and that a pharmacy owned and operated by Osco Drugs filled a prescription for Vioxx for Plaintiff Sybil Griffin. Merck contends that Plaintiffs have fraudulently joined Walgreens and Osco Drugs because Plaintiffs' claims against those parties are barred by the "learned intermediary" doctrine under Illinois law. Also, Merck contends that under Illinois law a sale of prescription medication does not constitute a sale of "goods" for purposes of Article 2 of the Illinois Uniform Commercial Code ("Illinois UCC"). Finally, Merck contends that the claims in this case are procedurally misjoined so as to amount to fraudulent joinder.

## DISCUSSION

### A. Merck's Request for a Stay

In opposing Plaintiffs' request for remand, Merck urges the Court to stay proceedings in this action pending transfer of the action by the Judicial Panel on Multidistrict Litigation ("JPML") for

---

1. Merck is a New Jersey citizen, and Defendant CVS Pharmacy, Inc. ("CVS") is a Rhode Island citizen.

coordinated or consolidated pretrial proceedings. *See* 28 U.S.C. § 1407. As Merck acknowledges, the Court retains full jurisdiction over this action until such time as a transfer order by the JPML is filed in the office of the clerk of the district court of the transferee district, in this instance the United States District Court for the Eastern District of Louisiana. *See Illinois Mun. Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844, 850 (7th Cir. 2004). The decision to grant a stay rests within the Court's discretion. *See Walker v. Merck & Co.*, No. 05-CV-360-DRH, 2005 WL 1565839, at *2 (S.D. Ill. June 22, 2005).

In *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001), the court noted that, while it is within the power of a district court to grant a stay of proceedings although subject matter jurisdiction is in question, a court should be "reluctant" to grant such a stay "without making any effort to verify jurisdiction." *Id*. at 1048. The *Meyers* court concluded that, when faced by a request for a stay while a challenge to jurisdiction is pending, "a court's first step should be to make a preliminary assessment of the jurisdictional issue." *Id*. If this "first step" suggests that removal was improper, then the court "should promptly complete its consideration and remand the case to state court." *Id*. at 1049. In this instance the Court's preliminary assessment of Plaintiffs' motion to remand indicates that the Court should proceed to resolve the motion.

  **B.**  **Plaintiffs' Motion to Remand**

    **1.**  **Legal Standard**

Removal based on diversity requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332; *Id*. § 1441. The party seeking removal has the burden of establishing federal jurisdiction. *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). "Courts should interpret the removal

statute narrowly and presume that the plaintiff may choose his or her forum." *Id*. Put another way, there is a strong presumption in favor of remand. *See Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976).

In evaluating diversity of citizenship, a court must disregard a defendant that has been fraudulently joined. *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999). A defendant is fraudulently joined when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). A defendant seeking removal based on alleged fraudulent joinder has the "heavy" burden of proving that, after the court resolves all issues of law and fact in plaintiff's favor, there is no possibility the plaintiff can establish a cause of action against the diversity-defeating defendant in a state court. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).

The scope of the Court's inquiry in evaluating a claim of fraudulent joinder is extremely narrow, namely, to determine whether, after resolving all issues of fact and law in a plaintiff's favor, the plaintiff has stated a claim upon which relief can be granted in Illinois state court against a diversity-defeating defendant. In *Simmons v. Norfolk Southern Railway Co.*, 324 F. Supp. 2d 914 (S.D. Ill. 2004), the Court explained that fraudulent joinder is not shown by "undertaking to try the merits of a cause of action, good upon its face." *Id*. at 916 (quoting *Southern Ry. Co. v. Lloyd*, 239 U.S. 496, 500 (1916)). *See also Valentine v. Ford Motor Co.*, No. 2:03-CV-090-JDT-WGH, 2003 WL 23220758, at *4 (S.D. Ind. Nov. 21, 2003) ("The test for fraudulent joinder . . . is a less searching test than the test under Rule 12(b)(6) [of the Federal Rules of Civil Procedure]. In fact, a federal court may find that a nondiverse defendant is not fraudulently joined for the purposes of

jurisdiction, and later a state court may find that the plaintiff failed to state a claim against the same nondiverse defendant, who will then be dismissed from the suit.") (citations omitted). As a sister court instructed recently, a court, in evaluating a claim of fraudulent joinder, "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no [fraudulent] joinder." *Id.*[2]

### 2. Fraudulent Joinder as to Count III and Count VI

As discussed, Count III and Count VI of Plaintiffs' complaint assert, respectively, claims for sale of a defective product sounding in strict products liability and negligent failure to warn against Walgreens and Osco Drugs. Merck argues that these claims are barred by the learned intermediary doctrine, which provides that, where a manufacturer of a prescription drug gives adequate warning to physicians of the drug's known dangerous propensities, the manufacturer and pharmacists

---

2. The *Smallwood* court went on to say that "there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." 385 F.3d at 573. *See also CC Indus., Inc. v. ING/ReliaStar Life Ins. Co.*, No. 03 C 2075, 2003 WL 21360905, at *3 (N.D. Ill. June 11, 2003). For example, the *Smallwood* court noted, fraudulent joinder would be established as to a non-diverse pharmacist if it could be shown by summary proof that "the in-state pharmacist defendant did not fill a prescription for the plaintiff patient." 385 F.3d at 574 n.12. *See also Veugeler v. General Motors Corp.*, No. 96 C 7278, 1997 WL 160749, at *3 (N.D. Ill. Apr. 2, 1997) (in a strict products liability action based on an allegedly defective airbag, fraudulent joinder was established by an uncontradicted affidavit of a non-diverse defendant alleged to have designed, manufactured, and supplied the airbag at issue that, although it negotiated for the contract to install airbags in cars manufactured by its co-defendant, it was not awarded the contract and "never supplied airbags or any component part thereof for installation in [the manufacturer's vehicles], including the vehicle described in plaintiff's Complaint at Law"). In this case, of course, Merck has produced no evidence that Walgreens and Osco Drugs never sold Vioxx to any of the Plaintiffs.

dispensing the drug are relieved of a duty to warn the drug's potential users; instead, the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients. *See Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 392 (Ill. 1987); *Fakhouri v. Taylor*, 618 N.E.2d 518, 519-20 (Ill. App. Ct. 1993); *Leesley v. West*, 518 N.E.2d 758, 761-62 (Ill. App. Ct. 1988); *Eldridge v. Eli Lilly & Co.*, 485 N.E.2d 551, 552-53 (Ill. App. Ct. 1985).

The Court is skeptical about whether the learned intermediary doctrine is a proper basis for a claim of fraudulent joinder, as it implicates issues about foreseeability and causation germane to the liability not only of Walgreens and Osco Drugs but also of Merck. As the Court explained in *Simmons*, a claim of fraudulent joinder that "indicate[s] that the plaintiff's case [is] ill-founded as to all the defendants" is one which "manifestly [goes] to the merits of the action as an entirety, and not to the joinder" and is "not such as to require the state court to surrender its jurisdiction." 324 F. Supp. 2d at 917 (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 153-54 (1914)). The issue of whether Merck gave adequate warning to physicians and users of Vioxx is at the heart of this case, and the Court questions whether a finding that the diversity-defeating defendants are shielded from liability by the learned intermediary doctrine might have preclusive effects with respect to Merck. Presumably a determination that Walgreens and Osco Drugs are immune from liability under the learned intermediary doctrine would be the law of the case as to Merck. *See Moore v. Anderson*, 222 F.3d 280, 284 (7th Cir. 2000) ("Under the law of the case doctrine, . . . when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case."). *See also Smallwood*, 385 F.3d at 574 (when a finding of fraudulent joinder will have law-of-the-case effect as to the liability of diverse defendants, the "jurisdictional" issue is in fact a challenge to the merits of a plaintiff's claim for

relief that must be resolved in state court).³

However, assuming for the sake of argument that Merck has properly asserted the learned intermediary doctrine as the basis for its claim that Walgreens and Osco Drugs have been fraudulently joined, the Court finds nevertheless that the applicability of the doctrine presents questions of fact that must be resolved in state court. Under Illinois law, the learned intermediary doctrine is a shield against liability only where the manufacturer of a prescription drug has given adequate warning of known dangerous propensities of the drug to physicians:

> Because the duty to warn is a duty to [a]dequately warn, it is imperative that the communication of the warnings be given in a manner reasonably calculated to reach the medical profession.
>
> * * * *
>
> [The warning] must be in such [f]orm that it could reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use (here, the members of the medical profession) . . . . [T]he [c]ontent of the warning must be of such a nature as to be comprehensible to the average [physician] and to convey a fair indication of the nature and extent of the danger to the mind of the reasonably prudent [physician] . . . . [T]he question of whether or not a given warning is legally sufficient depends upon the language used and the impression that such language is calculated to make upon the mind of the average user of the product.

---

3. In this connection, the Court notes that, were it to find fraudulent joinder with respect to Walgreens and Osco Drugs on the grounds asserted by Merck, then it would certainly be required to dismiss CVS, a diverse defendant, on the same grounds. The liability of CVS in this case is premised on the fact that a pharmacy owned and operated by CVS filled a prescription for Vioxx for Plaintiff James Sanders' decedent Betty Sanders. "[W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no [fraudulent] joinder; there is only a lawsuit lacking in merit." *Smallwood*, 385 F.3d at 574. "In such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder [fraudulent]. In such circumstances, the allegation of [fraudulent] joinder is actually an attack on the merits of plaintiff's case as such – an allegation that . . . 'the plaintiff's case [is] ill founded as to all the defendants.'" *Id*. (quoting *Cockrell*, 232 U.S. at 153).

> Implicit in the duty to warn is the duty to warn with a degree of [i]ntensity that would cause a reasonable [physician] to exercise . . . the caution commensurate with the potential danger . . . . A clear cautionary statement setting forth the exact nature of the dangers involved would be necessary to fully protect the seller.

*Mahr v. G. D. Searle & Co.*, 390 N.E.2d 1214, 1230 (Ill. App. Ct. 1979). *See also* Allan E. Korpela, Annotation, *Failure to Warn as Basis of Liability under Doctrine of Strict Liability in Tort*, 53 A.L.R.3d 239 (1974) (collecting cases).

Correspondingly, the learned intermediary doctrine is not a bar to liability where a manufacturer never communicated an adequate warning to physicians. In *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35 (Ill. 2002), the court explained that "a drug manufacturer that only share[s] information about its product's toxicity with its own employees breache[s] its duty to warn the medical community because without this information, doctors [cannot] provide appropriate and comprehensive medical advice for their patients. This prevent[s] them from functioning as 'learned intermediaries' to protect their patients' best medical interests." *Id*. at 43. The court said, "Doctors who have not been *sufficiently* warned of the harmful effects of a drug cannot be considered 'learned intermediaries.'" *Id*. (quoting *Proctor v. Davis*, 682 N.E.2d 1203, 1215 (Ill. App. Ct. 1997)) (emphasis in original). *See also AMF, Inc. v. Victor J. Andrew High Sch.*, 526 N.E.2d 584, 588 (Ill. App. Ct. 1988) ("Critical to imposing liability on physicians who prescribe drugs is their failure to communicate warnings to their patients which the manufacturer communicated to them. In the present case, however, . . . AMF failed to give adequate warnings to the defendants in the first instance, . . . and, therefore, the learned intermediary doctrine is, if for no other reason, inapplicable.").

Most importantly, under Illinois law the issue of whether a manufacturer gave adequate warning of the known dangerous propensities of a drug so as to trigger the learned intermediary

doctrine is one of fact. In *Hansen*, the Supreme Court of Illinois instructed that "the adequacy of warnings is a question of fact, not law, for the jury to determine." 764 N.E.2d at 43 (quoting *Proctor*, 682 N.E.2d at 1215). *See also Noyola v. Johnson & Johnson*, No. 85 C 2184, 1986 WL 14657, at *2 (N.D. Ill. Dec. 16, 1986) ("[U]nder Illinois law, the adequacy of warnings is ordinarily a question of fact which is inappropriate for resolution on a motion for summary judgment."); *Mahr*, 390 N.E.2d at 1230 ("[T]he sufficiency of form, content and intensity [of a manufacturer's warning to physicians] is not resolved by pointing to a single document, but remains a question to be resolved by the trier of fact in the light of all the information provided by the manufacturer and all that was reasonably possible to provide.").

In this instance the clear import of the allegations of Plaintiffs' complaint is that Merck never gave adequate warning of the known dangerous propensities of Vioxx to physicians so as to trigger the application of the learned intermediary doctrine in this case:

> The Vioxx manufactured and supplied by Merck was unaccompanied by proper and adequate warnings regarding all adverse side effects associated with the use of Vioxx, and the comparative severity and duration of the adverse effects. The warnings given by Merck did not accurately reflect the symptoms, type, scope or severity of the side effects.
>
> \* \* \* \*
>
> Merck also failed to effectively warn users and physicians that numerous other methods of pain relie[f], including Ibuprofen, Naproxen, and/or aspirin were safer [than Vioxx].
>
> \* \* \* \*
>
> Merck failed to give adequate post-marketing warnings or instructions for the use of Vioxx because after Merck knew or should have known of the risk of injury from Vioxx use, Merck failed to provide adequate warnings to users or consumers and continued to aggressively promote the product to doctors, hospitals, and directly to consumers.

Compl. ¶ 60, ¶¶ 63-64. In fact, the complaint alleges active fraud by Merck in concealing adverse health effects of Vioxx from physicians: "Merck communicated the purported benefits of Vioxx, while failing to disclose the serious and dangerous side effects related to the use of its product, and in fact actually concealing from health care providers the adverse cardiovascular effects of Vioxx." *Id.* ¶ 95.

In the Court's view, the question of the applicability of the learned intermediary doctrine in this case is one of fact. Therefore, the question must be resolved in favor of Plaintiffs and remand to state court. *See Poulos*, 959 F.2d at 73. *See also Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) ("[W]e have frequently cautioned the district courts against pretrying a case to determine removal jurisdiction."); *Darras v. Trans World Airlines, Inc.*, 617 F. Supp. 1068, 1069 (N.D. Ill. 1985) (observing that a court "need not try (or even pretry) [a] case" to resolve allegations of fraudulent joinder).[4]

---

4. The Court notes also that in this instance Plaintiffs specifically have pleaded a well established exception to the learned intermediary doctrine for cases in which a pharmacy is aware of a patient's health history, yet dispenses to the patient a contraindicated drug. *See Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1124-25 (Ill. 2002) (a pharmacy owes a duty to warn either a customer or the customer's physician that a drug is contraindicated where the pharmacy knows of the customer's drug allergies and knows that a prescribed drug is contraindicated for a person with those allergies). The complaint in this case alleges with respect to Plaintiffs Kimberly Riddle, Sybil Griffin, and Rita Carr that Walgreens and Osco Drugs, "knowing of [the plaintiffs'] health history, sold [them] Vioxx without warning that Vioxx was not advisable because of [such] health history," with the proximate result that Plaintiffs suffered injuries, including blood clots, stroke, and heart attacks. Compl. ¶ 2, ¶ 3, ¶ 4. The complaint alleges also that Walgreens and Osco Drugs "knew about the health histories of plaintiffs and knew that Vioxx was contraindicated or not advisable for someone with their respective health histories, but nevertheless sold Vioxx without warning plaintiffs about this contraindication." *Id.* ¶ 89. Although Merck challenges the adequacy of these allegations, Merck has the burden of proof at this juncture and cannot shift that burden to Plaintiffs by, for example, pointing to formal defects in their complaint. *See McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (a party asserting federal jurisdiction bears the burden of proving that a case is properly in federal court and may not "be relieved of his burden by any formal procedure"); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (fraudulent

### 3. Fraudulent Joinder as to Count XI

The Court concludes also that Plaintiffs have stated a viable claim for breach of warranty under Illinois law against Walgreens and Osco Drugs. Merck contends that the transactions at issue in this case do not involve "goods" within the meaning of Article 2 of the Illinois UCC, relying upon *Brandt v. Boston Scientific Corp.*, 792 N.E.2d 296 (Ill. 2003), in which the court held that a contract involving the sale and surgical implantation of a pubovaginal sling to treat incontinence was a transaction predominantly for medical services, not goods. *See id*. at 303-04. In the Court's view, the question of whether the transactions at issue in this case involve "goods" within the meaning of Article 2 of the Illinois UCC presents an ambiguous question of state law that must be resolved in favor of Plaintiffs and remand.

As the Court has pointed out on a prior occasion, the applicability of the holding in *Brandt* to facts like those presented by this case is unclear. *See Rabe v. Merck & Co.*, No. Civ. 05-363-GPM, Civ. 05-378-GPM, 2005 WL 2094741, at *2 (S.D. Ill. Aug. 25, 2005). The Court notes that in *Berry v. G. D. Searle & Co.*, 309 N.E.2d 550 (Ill. 1974), a case involving a prescription contraceptive, the court stated that the provisions of the Illinois UCC "clearly demonstrate the legislative intent to create a statutory cause of action for breach of implied warranty to afford consumer protection to those who sustain personal injuries resulting from product deficiencies." *Id*. at 553. Also, in *Woodill v. Parke Davis & Co.*, 374 N.E.2d 683 (Ill. App. Ct. 1978), a case arising from injuries to a child allegedly caused by the administration of a prescription drug to the child's mother while she was hospitalized as an obstetrical patient, the court specifically

---

joinder is not established by a plaintiff's failure to plead up to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure); *Waterloo Coal Co. v. Komatsu Mining Sys., Inc.*, No. C2-02-560, 2003 WL 124137, at *4 (S.D. Ohio Jan. 9, 2003) (same).

held that the plaintiffs stated a claim for breach of implied warranties against the manufacturer of the drug. *See id*. at 688-89.

The Court concludes that the question of whether the transactions at issue in this case involve a sale of goods for purposes of the Illinois UCC must be resolved in favor of remand. "[I]f 'intricate analysis of state law' is needed to dismiss [a] claim, the claim may not be disregarded for purposes of diversity jurisdiction." *Polson v. Cottrell, Inc.*, No. 04-CV-822-DRH, 2005 WL 1168365, at *1 (S.D. Ill. May 17, 2005) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992)). *See also Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) ("In evaluating fraudulent joinder claims, we must . . . resolve all . . . ambiguities in the controlling state law in favor of the non-removing party.").[5]

### 4.     Fraudulent Misjoinder

Finally, Merck argues that the claims in this case are "fraudulently misjoined," relying upon *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996). In *Tapscott* the court identified a third form of fraudulent joinder in addition to the two that currently are recognized in this Circuit, namely, "egregious" misjoinder of claims that is tantamount to fraudulent joinder. In *Tapscott*, one group of plaintiffs seeking to represent a class sued a group of defendants for statutory fraud arising from the sale of automobile service contracts. *See id*. at 1355. Another group of plaintiffs

---

5. To the extent Merck argues that the plaintiffs' claims for breach of warranty against Walgreens and Osco Drugs are barred by the learned intermediary doctrine, the Court already has explained why it refuses to apply that doctrine as a basis for a finding of fraudulent joinder in this case. Also, the Court is not aware of any published decision of an Illinois state court that has applied the learned intermediary doctrine outside of the scope of claims for strict products liability and negligence to warranty claims and, as discussed, at this juncture the Court is required to construe state law in the light most favorable to the plaintiffs. Finally, like the applicability of the learned intermediary doctrine, the question of whether a transaction is predominantly for goods or for services under the Illinois UCC generally is one of fact. *See Brandt*, 792 N.E.2d at 300-01.

representing a separate putative class sued another group of defendants for statutory fraud arising from the sale of extended service contracts in connection with the sale of retail products. *See id*. The court held that the defendants had been misjoined because on the face of the complaint there was no claim against the two groups of defendants even remotely arising from the same transaction or occurrence. All that the claims shared was an invocation of the Alabama fraud statute, rendering joinder "so egregious as to constitute fraudulent joinder." *Id*. at 1360. The *Tapscott* court emphasized that misjoinder is tantamount to fraudulent joinder not simply when claims are misjoined but when they are *egregiously* misjoined: "We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id*. The United States Court of Appeals for the Seventh Circuit has not had occasion to pass on the validity of the doctrine of "fraudulent misjoinder" crafted in *Tapscott*. The Court has given respectful consideration to the *Tapscott* decision, *see Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987), but the Court declines to adopt the fraudulent misjoinder doctrine.

In the Court's view, whether viable state-law claims have been misjoined – even "egregiously" misjoined – is a matter to be resolved by a state court. Nothing in the jurisprudence of the Supreme Court of the United States regarding fraudulent joinder suggests that the joinder of non-fraudulent claims under state procedural rules is a question that implicates the subject matter jurisdiction of a federal court. *See Chicago, Rock Island & Pac. Ry. Co. v. Whiteaker*, 239 U.S. 421, 425 (1915) (holding that there is no fraudulent joinder when "the plaintiff has a right of action under the law of the state and to insist upon [a non-diverse defendant's] presence as a real defendant."). *See also Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954) (state

"procedural provisions cannot control the privilege [of] removal granted by the federal statute"); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941) (a plaintiff against whom a counterclaim had been filed could not remove a case to federal court because the existence of federal subject matter jurisdiction is not affected by state rules of procedure: "The removal statute which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied.").

However, even assuming for the sake of argument that joinder of non-fraudulent claims is a question that implicates federal subject matter jurisdiction, there are additional reasons for the Court not to adopt the fraudulent misjoinder doctrine. The Seventh Circuit Court of Appeals has emphasized frequently that jurisdictional rules must be clear and easy to apply, so that they yield uniform results. "The first characteristic of a good jurisdictional rule is predictability and uniform application." *Exchange Nat'l Bank of Chicago v. Daniels*, 763 F.2d 286, 292 (7th Cir. 1985). "Jurisdictional rules ought to be simple and precise so that judges and lawyers are spared having to litigate over not the merits of a legal dispute but where and when those merits shall be litigated." *In re Lopez*, 116 F.3d 1191, 1194 (7th Cir. 1997). "The more mechanical the application of a jurisdictional rule, the better. The chief and often the only virtue of a jurisdictional rule is clarity." *In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987) (citations omitted). *See also Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005) ("[T]he first virtue of any jurisdictional rule is clarity and ease of implementation.").

In the ten years since *Tapscott* was decided, no clear definition of "egregious misjoinder" has emerged. "[U]nder *Tapscott*, something more than 'mere misjoinder' of parties may be required to find fraudulent misjoinder. Precisely what the 'something more' is was not clearly established

in *Tapscott* and has not been established since." *In re Bridgestone/Firestone, Inc.*, 260 F. Supp. 2d 722, 728 (S.D. Ind. 2003). *See also Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004) ("[T]he governing legal standards regarding the fraudulent misjoinder doctrine are far from clear."); *Bright v. No Cuts, Inc.*, No. Civ.A.03-640, 2003 WL 22434232, at *4 n.21 (E.D. La. Oct. 27, 2003) ("While the *Tapscott* [c]ourt was clear that 'mere misjoinder' is not equivalent to *fraudulent* misjoinder, this aspect of the *Tapscott* holding has engendered confusion among courts and commentators alike.") (emphasis in original).

The Court is willing to hazard that no clear standards for the application of the *Tapscott* doctrine will emerge. As the Court knows from its experience, determinations about proper joinder are of necessity highly discretionary, involving intensely case-specific decisions about the fairest and most economical way to adjudicate particular claims. *See Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982) ("The grant or denial of a motion to bring or to drop a party lies in the discretion of the judge . . . . The trial court's exercise of discretion will not be disturbed on appeal unless an abuse is shown."); *Kuechle v. Bishop*, 64 F.R.D. 179, 180 (N.D. Ohio 1974) (in assessing permissive joinder of parties, "the Court is operating in an area of considerable discretion. The consideration[s] involved are essentially those of fairness."). In other words, proper joinder is, to a very great extent, in the eye of the beholder.

Although most exercises of a trial court's discretion are shielded on appeal by a deferential standard of review, discretionary decisions masked as jurisdictional ones are not. *See Storm v. Storm*, 328 F.3d 941, 943 n.1 (7th Cir. 2003) ("Because the existence of subject matter jurisdiction goes to the ultimate question of whether the federal courts have the power to entertain and decide a case, we emphasize that our review in such situations is de novo."). The Court fails to see how

the adoption of the *Tapscott* doctrine, which erects a court's discretion concerning joinder into a jurisdictional principle, is likely to promote predictable results at either the trial court level or on review.

The consequences of erroneous jurisdictional decisions are serious for both courts and litigants, in terms of wasted time and resources, and the Court sees no possible advantage in staking such decisions on discretionary determinations about misjoinder of claims. *See Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 319-20 (7th Cir. 1998) (after three years of litigation, dismissing a case on appeal for lack of subject matter jurisdiction based on a question of first impression). *See also McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 336-37 (5th Cir. 2004) (after a full trial on the merits and a judgment for the defendant, on appeal ordering a case remanded to state court for lack of subject matter jurisdiction due to the trial court's erroneous finding of fraudulent joinder). In sum, just as the Court has refused to follow *Tapscott* in the past, *see Rabe*, 2005 WL 2094741, at *2, the Court will continue to reject the doctrine of fraudulent misjoinder until such time as it is adopted by the United States Supreme Court or the Seventh Circuit Court of Appeals.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand (Doc. 7) is **GRANTED**. Pursuant to 28 U.S.C. § 1447(c), this action is **REMANDED** to the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of federal subject matter jurisdiction. The Motion to Sever brought by Defendant Merck & Co. (Doc. 4), the Motion to Stay brought by Defendant Merck & Co. (Doc. 6), the Motion to Dismiss brought by Defendant CVS Pharmacy, Inc. (Doc. 13), the Motion to Dismiss brought by Defendant American Drug Stores, Inc. (Doc. 23), and the Motion to

Dismiss brought by Defendant Walgreen Co. (Doc. 27) are **DENIED as moot**.

    **IT IS SO ORDERED.**

    DATED:  4/21/2006

                                    s/ G. Patrick Murphy
                                    G. PATRICK MURPHY
                                    Chief United States District Judge